[Civ. No. 3048. Second Appellate District, Division Two.—January 29, 1920.]

MILES H. BOND, Respondent, v. JOSEPH C. HOLLO-WAY, Defendant; PACIFIC COAST CASUALTY COMPANY OF CALIFORNIA (a Corporation), Appellant.

[1] MOTOR VEHICLES—MUNICIPAL ORDINANCE PRESCRIBING ROUTE—AUTHORIZED DEVIATION BY DRIVER—EVIDENCE—PRESUMPTION.—In an action against a jitney-bus driver and his insurance carrier to recover damages suffered by collision with a motor-bus being operated pursuant to a permit issued in accordance with the provisions of a municipal ordinance, the accident having happened at a point beyond the prescribed terminus of the route over which the motor-bus operated, it may properly be assumed, in the. absence of evidence to the contrary, that such deviation was authorized where the ordinance under which the bus was operated in several of its clauses authorizes a deviation, under circumstances therein specified, from the prescribed route.

[2] ID.—CHANGE OF STATE SERIAL NUMBER—NECESSITY FOR NEW PERMIT.—The jitney-bus driver having secured the permit to operate his motor-bus, in accordance with the provisions of the ordinance, it was not necessary for him to secure a new permit for that purpose at the time the state serial number of the machine was changed, the ordinance not having so provided.

[3] ID.—FAILURE TO FILE AGREEMENT OF RENEWAL OF POLICY—RELEASE OF INSURANCE COMPANY FROM LIABILITY.—The ordinance having provided that it should be unlawful to conduct any such motor-bus business unless there should be executed and remain in full force and effect at all times, and on file in the office of the

city clerk, a certain indemnity insurance policy, but not having
provided that the agreements of renewal should thus be on file, the
insurance company was not released from liability by reason of the
fact that the agreement of renewal covering the period in which
the accident occurred was not on file in the office of the city
clerk at the time of the accident where the policy was in effect
at that time and such agreement of renewal was thereafter filed
with the city clerk.

[4] ID.—EXECUTION OF INDEMNITY POLICIES AS COMMERCIAL ADVEN-
TURE—STRICT RULES OF CONSTRUCTION NOT APPLICABLE.—An in-
surance company executing such an indemnity bond as a commer-
cial venture cannot invoke the strict rules which the courts and
statutes have devised for the protection of gratuitous sureties.

APPEAL from a judgment of the Superior Court of
Los Angeles County. Chas. Monroe, Judge. Affirmed.

The facts are stated in the opinion of the court.

Bowen & Bailie for Appellant.

Raymond E. Hoyt and George H. Moore for Respondent.

SLOANE, J.—Appellant, Pacific Coast Casualty Company
of California, was sued by the respondent to recover dam-
ages suffered by collision with a motor jitney bus owned and
driven by the defendant Holloway. The latter was insured
against liability under a casualty insurance policy issued
by the appellant, which policy, by its terms, inured to the
benefit of anyone having a cause of action arising out of the
negligent operation of the defendant Holloway's motor-bus.
On the trial before a jury verdict and judgment were for
the plaintiff in the sum of $2,290 and costs. Special find-
ings were also returned by the jury; and this appeal is taken
from the order of the trial court denying appealing defend-
ant's motion to vacate the judgment on alleged grounds of
inconsistency of the judgment with the special verdict of
the jury, under sections 663, 663a of the Code of Civil
Procedure.

Appellant relies, in its contention, upon an ordinance of
the city of Los Angeles, where the cause of action arose,
which makes it unlawful for any person to operate a motor-

4. Liability of surety company as distinguished from that of
gratuitous surety, note, 12 A. L. R. 382.

bus without having first obtained a permit in writing from the board of police commissioners, and requiring certain formalities as a condition of such permit. Under the permit the person holding it is entitled to obtain a license from the city clerk to operate his car over a given route, to be designated in the permit. One of the conditions for the permit is that the applicant shall procure and, at all times while operating under such permit, maintain, in full force and effect, on file in the office of the city clerk, a good and sufficient bond or policy of insurance for the protection of anyone who may suffer injury or damage through the negligent operation of such motor-bus, such bond or policy in its terms to inure to and be for the benefit and protection of such injured persons, and to be made payable directly to the injured or damaged person.

The defendant Holloway applied for and obtained such permit from the board of police commissioners, secured and filed with the city clerk, in due form, as required, the insurance policy issued by the appellant company, obtained a city license and entered upon the operation of his motor-bus line, which, by the terms of his permit, extending from the Plaza, by way of Main Street and Moneta Avenue, to Fifty-eighth Street. The accident sued upon occurred thereafter on the twenty-eighth day of January, 1916. The special verdict which appellant contends is inconsistent with and fails to support the judgment, finds, in so far as material to the points presented in appellant's argument, substantially as follows: The policy of insurance was executed August 31, 1915, for a period beginning August 20, 1915, and ending November 20, 1915. By special indorsement dated October 1, 1915, and filed in the office of the city clerk on October 4, 1915, this policy was extended and continued in force from noon of the first day of October, 1915, to midnight of the thirty-first day of December, 1915; and by a second indorsement dated December 31, 1915, said policy was extended and continued in force from midnight of the thirty-first day of December, 1915, to midnight of the thirty-first day of March, 1916. Such latter extension was not filed in the office of the city clerk until February 3, 1916. The accident on which this suit was based occurred on the twenty-eighth day of January, 1916, at the junction of Slauson Avenue and Moneta Avenue, and some two hun-

dred feet beyond and outside the route described in defendant Holloway's permit. A permit dated August 30, 1915, was issued by the board of police commissioners to defendant Holloway whereby he was granted permission to use his Ford car No. 150,653 in carrying passengers over the designated route, and, on filing the permit in the city clerk's office, said clerk was authorized to issue the defendant Holloway a license. On December 31, 1915, a new state license, No. 89,377, was issued for defendant Holloway's car and the new number plate substituted for the old. By permit issued by the board of police commissioners, of date February 1, 1916, defendant Holloway was granted permission to use Ford auto No. 89,377 in the business of carrying passengers for hire over the route as previously granted, and, in accordance with said permit, a license was issued therefor by the city clerk for a term of three months from the first of January, 1916, to the first of April, 1916. At the time of the accident said Holloway had no other permit or license for the operation of motor-bus bearing state license No. 89,377 than as last above described. By special indorsement on its policy hereinbefore described, and dated January 3, 1916, the appellant company agreed that the automobile designated in the policy bore the new state license No. 89,377. Such agreement was filed in the office of the city clerk February 3, 1916.

The particulars in which it is claimed that these special findings fail to support and are inconsistent with the general verdict and the judgment are: (1) That the accident occurred two hundred feet beyond the prescribed terminus of the motor-bus route; (2) that at the date of the accident the original permit and license to defendant Holloway on his car bearing state license No. 150,653 had expired, and the renewal under the new state number, 89,377, dating back to January 1, 1916, and covering the date of the accident, was not made until February 3, 1916, after the accident; and (3) that at the time of the accident the agreement of extension of the insurance policy and its application to the new state number of defendant Holloway's machine, which was entered into before the accident, was not filed with the city clerk. It is, therefore, argued that the defendant Holloway was, at the time of the injuries complained of, operating in violation of the ordinances of the city,

as an outlaw on the public streets, and that, the insurance policy having been given under the ordinance to cover the operation of a motor-bus under and in conformity to the law, no liability existed under the policy.

As a matter of fact, the policy, in its terms, is not conditioned upon and makes no reference to the operation of the insured automobile business under or in pursuance to any ordinance, permit, or license, or over any prescribed route. But conceding appellant's claim that it executed this insurance policy as a statutory bond, and that it is, therefore, entitled to all the privileges of a surety upon a statutory bond, we find very flimsy legal support for its defense, and even less equity.

[1] In the first place, the ordinance under which the defendant Holloway was operating substantially covers the deviation by the auto-bus, on the occasion of the accident, from the prescribed route by the following section: "It shall be unlawful for the driver of any motor-bus to deviate more than three blocks from the route set forth in the permit granted by said board of police commissioners, except as in this section set forth. In case the motor-bus is so deviated, it must return to the point of deviation and proceed in the direction it was headed before such deviation. The driver of any motor-bus may, without special permit, deviate from the route set forth in said permit for the purpose of transporting passengers to or from any public attraction or demonstration. If any route over which any motor-bus is operated lies within five blocks of any church or public school, such motor-bus may be diverted from such route and be operated to such church or public school and return to the point of diversion from such route and proceed in the direction in which such motor-bus was headed before being diverted to such church or school. If any route over which any motor-bus is operated extends into or passes through the business district of said city as said district is defined by the ordinances thereof, such motor-bus may be diverted from such route while within said business district to any point within said district; provided, however, that such motor-bus is driven to the terminal of said route before the return trip is made." In the absence of any evidence to the contrary, it may be

properly assumed that the deviation shown in this case comes under one or the other of these permissive clauses.

[2] Again, there is not a word of evidence, nor any finding of the jury, that this motor-bus was operating at the time of the accident in violation of law. The ordinance says that it shall be unlawful for any person to engage in the ·business of transporting passengers by motor-bus without complying with certain conditions and obtaining a permit. The defendant Holloway met these requirements and obtained his permit. So far as appears from the portion of the ordinance printed in the record, no requirement is made for renewing the permit, or making it unlawful to carry on the business without a license, or indicating how often a license must be renewed. It is provided that the police commissioners may suspend or revoke the permit for failure or neglect to observe the requirements of the ordinance; but in this case there seems to have been no such suspension or revocation. There is no finding of the jury, as appellant claims, that Holloway was running his auto-bus line without a permit at the date of the accident. The finding of the jury was that at the time of the accident "he did not have any other permit or license from the city of Los Angeles for the operation of Motor Bus No. 89377." This was the new state serial number for the same machine covered by the original permit under state number 150,653. We find nothing in the record, and our attention is called to no general law which made it necessary for a new permit to issue from the police commissioners every time a change was made in the serial state number of the machine.

[3] There is no merit in the contention that there was any lapse in the policy of insurance merely because the agreement of renewal covering the period in which the accident occurred was not filed with the city clerk until after the accident, though duly entered into before the accident. The ordinance does provide that it shall be unlawful to conduct any such motor-bus business unless there shall be executed and remain in full force and effect at all times, and on file in the office of the city clerk, the required indemnity policy, but such policy was executed and filed with the city clerk and kept in full force and effect, and, so far as appears, continued on file with the city clerk up to and after the accident. It is not a fact that the policy at any time

expired. The finding of the jury is that there was "an extension and continuation" of the policy by special indorsement attached to the policy and dated December 31, 1915, continuing it in force from midnight of the 31st of December, 1915, to midnight of the 31st of March, 1916, covering the date of the accident. It was the execution of this extension by the insurance company, not the filing thereof with the city clerk, that continued the policy in force. And the jury does not find that the policy was not on file with the clerk at the date in question. It finds that the extension or continuation was filed with the clerk on February 3d, after the accident. It was executed the thirty-first day of December. It was not necessary to its validity that it be attached to the policy at any given time to render it effective. In any event, the failure to have the various indorsements and extensions of this policy on file with the city clerk is not such a violation of the conditions of the ordinance as the appellant could take advantage of to avoid its contract.

There is nothing in the findings of the jury to justify the conclusion that the defendant was not engaged in the lawful conduct of his motor-bus business, under the protection of a valid indemnity insurance policy, at the time of the injuries complained of.

If the argument of the court in this decision seems narrow and technical, it is at least no more so than the contentions of appellant. [4] Even as a surety on a statutory bond, appellant cannot invoke the strict rules which the courts and statutes devised for the protection of gratuitous sureties. The trend of modern decisions is to place persons or corporations executing indemnity bonds as a commercial venture upon the same footing as the makers of ordinary contracts.

The order appealed from is affirmed.

Finlayson, P. J., and Thomas, J., concurred.